# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROMELIO ALVIN MARTINEZ, JR.,<br><br>               Plaintiff,<br><br>    v.<br><br>STEPHANIE MORGAN; JOHN DOE I, Sheriff of Malheur County; JOHN DOE II, Physician in Ada County; JASON R. CHANDLER; and JOHN DOE III, Sheriff of Bingham County,<br><br>               Defendants. | Case No. 1:19-cv-00201-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Romelio Alvin Martinez, Jr.'s Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

## 1.      Screening Requirement

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a

frivolous or malicious claim, fails to state a claim upon which relief may be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§§ 1915(e)(2)(B) & 1915A(b).

## 2.     Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim

for relief under Rule 8 if the factual assertions in the complaint, taken as true, are

insufficient for the reviewing court plausibly "to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not

require detailed factual allegations, ... it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts

pleaded are "merely consistent with a defendant's liability," or if there is an "obvious

alternative explanation" that would not result in liability, the complaint has not stated a

claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks

omitted). And a court is not required to comb through a plaintiff's exhibits or other filings

to determine if the complaint states a plausible claim.

## 3.     Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction

("IDOC"). On February 6, 2019, while Plaintiff was in the custody of the Bingham

County Jail pursuant to a parole violation, Defendant Deputy Morgan mistakenly issued

Plaintiff a citation for possession of methamphetamine. (Compl., Dkt. 3, at 3.) As a result, Defendant Chandler, the Bingham County Prosecutor, issued a criminal complaint against Plaintiff. (*Id*. at 2.) On February 21, 2019, Defendants Morgan and Chandler realized that the possession citation was a mistake, and the criminal charges against Plaintiff were dismissed. (*Id*.; Dkt. 3-1 at 2.) Plaintiff claims that the mistaken charge was the result of negligence—specifically, "poor work performance" and "unsecured paperwork." (Dkt. 3 at 2, 3, 4.)

Plaintiff also alleges that, on an unidentified date, Plaintiff was supposed to be transported from the Bingham County Jail to the Ada County Jail. However, again due to "poor work performance" and "unsecured paperwork," he was mistakenly transported to the Idaho Correctional Center—which, until several years ago, was operated by a private prison company under contract with the IDOC.[1] Plaintiff claims that when he arrived at the prison, Warden Turner—an individual not identified as a defendant in the caption of the Complaint—physically assaulted him. (Dkt. 3-1 at 12.)

Plaintiff also claims he was wrongfully placed in segregation "after being accused of a disciplinary offense" and that he has been discriminated against based on race or class. (*Id*. at 15.)

---

[1] Because Plaintiff identifies the prison as "Idaho Correctional Center"—and *not* the Idaho State Correctional Center, which has been the name of the prison ever since the State of Idaho overtook operations from the private prison company—it appears that this claim might have arisen more than two years before the filing of the Complaint. *See* Idaho Code § 5-219 (two-year statute of limitations for personal injury actions); *see also Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding that state statute of limitation for personal injury actions governs § 1983 actions), *abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

Finally, Plaintiff claims that, on August 27, 2012, an unidentified physician at the Ada County Jail denied Plaintiff "low back surgery" and committed medical malpractice with respect to Plaintiff's serious back pain. (Dkt. 3 at 6.)

4.     **Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

### A.     *Statute of Limitations*

At least some of Plaintiff's claims appear barred by the statute of limitations. Federal civil rights actions arising in Idaho are governed by a two-year statute of limitations. Idaho Code § 5-219; *Wilson*, 471 U.S. at 280. Although the state statute of limitations governs the time period for filing a § 1983 claim, federal law governs when that claim accrues, or arises. *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994). Under the "discovery rule," a claim accrues "when the plaintiff knows or has reason to know of the injury" that is the basis of the claim. *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (internal quotation marks omitted). That is, the statute of limitations begins to run when the plaintiff becomes aware of the actual injury—not "when the plaintiff suspects a legal wrong." *Id*.

If a plaintiff cannot show that his claim accrued during the statute of limitations period, he may file a lawsuit beyond the limitations deadline only if he can show that the statute should have been tolled (or stopped) for a certain period of time during the deadline period within which he should have filed the lawsuit. Pursuant to the Prison

Litigation Reform Act ("PLRA"), the "statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir. 2005).

In addition to tolling under the PLRA, state tolling law applies to § 1983 actions unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 464-65 (1975); *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008). Idaho law allows for statutory tolling of the statute of limitations for a person's juvenile status or insanity. Idaho Code § 5-230. However, because the Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute," equitable tolling is not available in Idaho. *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007).

The doctrine of equitable *estoppel*, however, is available in Idaho. While it "does not 'extend' a statute of limitation," equitable estoppel works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co., v. Chemetics International, Inc*., 887 P.2d 1039, 1041 (Idaho 1994). Equitable estoppel requires a showing of four elements: "(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that

the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id.*

Allowing for a maximum of thirty days to exhaust the prison or jail administrative process, any claims that arose more than two years and thirty days before the filing of the Complaint in this action appear to be time-barred. If Plaintiff includes any such claims in an amended complaint, he must explain why he believes those claims are not subject to dismissal as untimely.

### B.    *Substantive Legal Standards That May Apply to Plaintiff's Claims*

Plaintiff asserts his claims under 42 U.S.C. § 1983, the civil rights statute. (Dkt. 3 at 1.) To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Jail or prison officials and medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery

against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1205-09.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

           i.         <u>Conditions-of-Confinement Claims</u>

Different standards apply to the constitutional claims of inmates depending on whether the inmate was a convicted prisoner or a pretrial detainee at the time the claims arose.

Conditions of confinement claims of pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment, which guarantees such detainees the right to be free from conditions of confinement that amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "There is no constitutional infringement, however, if restrictions are 'but an incident of some other legitimate government purpose.'" *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (quoting *Bell*, 441 U.S. at 535).

"In distinguishing between a permissible restriction and impermissible punishment, [a court must] first examine whether the restriction is based upon an express intent to inflict punishment"; if it is not, then the court must "consider whether punitive intent can be inferred from the nature of the restriction." *Id.* This determination depends on "whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether the restriction appears excessive in relation to the alternative purpose assigned to it." *Id.* at 1045-46 (internal quotation marks and alterations omitted). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539.

Pretrial detainees have a due process right to adequate medical and mental health care while detained. *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010). Medical-treatment claims of pretrial detainees are analyzed using a standard of "objective deliberate indifference." *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks and alteration omitted).

Although the Court uses an objective standard in evaluating medical-treatment claims of pretrial detainees, this standard must not be confused with the objective standard used for evaluating claims of negligence under state law. This is because negligence—the "mere lack of due care" by a governmental official—"does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc), *cert. denied sub nom. Los Angeles Cty. v. Castro*, 137 S. Ct. 831 (2017); *see also Daniels*, 474 U.S. at 332. Therefore, a pretrial detainee complaining of inadequate medical treatment must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

The Eighth Amendment applies to convicted prisoners and does not prohibit punishment in all forms. Rather, it protects against *cruel and unusual* punishment.

To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition

that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with "deliberate indifference...only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v.*

*Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

Differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015).

It is unclear whether Plaintiff was a convicted prisoner or a pretrial detainee when each of his claims arose. If Plaintiff files an amended complaint, he should include dates as to when each event occurred and clarify his status on those dates. The Court notes that if a parolee is in custody pursuant to a parole violation, he remains in custody pursuant to the underlying criminal judgment and, therefore, would be considered a convicted prisoner for purposes of conditions-of-confinement claims.

ii.     Excessive Force Claims

A pretrial detainee possesses a due process right, under the Fourteenth Amendment, to be free from excessive force while confined in a jail before and during trial. A pretrial detainee asserting an excessive force claim must show "only that the officers' use of that force was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was

actively resisting." *Id.* The plaintiff need not show that the officers were subjectively aware that the use of force was unreasonable. *Id.*

An excessive force claim is analyzed differently if the plaintiff is a convicted prisoner at the time the force is used. Because the Eighth Amendment prohibits only "cruel and unusual" punishment, a use of force amounts to a constitutional violation only if it is applied "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted). Therefore, a prisoner asserting an excessive force claim must show "malicious and sadistic force, not merely objectively unreasonable force." *Id.*

Not every "malevolent touch" by a prison guard gives rise to an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.") "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted).

iii.     Claims Regarding Disciplinary Proceedings and Segregation

The right to procedural due process prohibits the government from depriving an individual of a liberty or property interest without following the proper procedures for doing so. *See Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). To succeed on a procedural due process claim regarding institutional disciplinary proceedings, a convicted

prisoner must establish (1) that he possessed a liberty interest in avoiding discipline and (2) that the defendants deprived him of that interest as a result of insufficient process. *See Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000).

The Supreme Court has held that an inmate possesses a liberty interest under the federal Constitution when a change occurs in confinement that imposes an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. A district court considering whether an inmate possesses such a liberty interest must analyze three factors: (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation (such as administrative segregation and protective custody); (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) whether the length of the plaintiff's sentence was affected. *Id*. at 486-87. If these factors are not met, there is no liberty interest in not being subjected to disciplinary segregation, which results in a prisoner not being entitled to sue jail or prison officials for due process violations arising from a disciplinary proceeding. Applying these factors in *Sandin*, the Supreme Court determined that a prisoner lacked a protectable liberty interest in avoiding 30 days of confinement in disciplinary segregation. *Id*. at 487.

If a prisoner possesses a protectable liberty interest with respect to prison disciplinary proceedings, then a court must consider to what process the prisoner was due. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418

U.S. 539, 560 (1974) ("Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted). The Due Process Clause requires that the inmate receive notice of the charges against him and an opportunity to respond. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

Due process claims asserted by pretrial detainees regarding disciplinary proceedings are subject to a different analysis. "[T]he need for preserving 'internal order and discipline'" applies to pretrial detainees as well as convicted prisoners; therefore, such detainees are not "free to violate jail rules with impunity." *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996) (quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979)). However, because a pretrial detainee has neither been convicted nor sentenced when he is subjected to discipline, the detainee "may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule." *Id.*

iv.        Equal Protection Claims

The Fourteenth Amendment guarantees every person the equal protection of the law. The purpose of the Equal Protection Clause "to secure every person … against intentional and arbitrary discrimination." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted). Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). But "[t]he

Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 440 (1985). Otherwise, equal protection claims are subject to a rational basis inquiry. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993). However, "[i]n the prison context, ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are 'reasonably related to legitimate penological interests.'" *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In a rational basis analysis, the relevant inquiry is whether Defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). Under this rational basis test, Plaintiff can prevail only if he is similarly situated with persons who are treated differently by Defendants, and if Defendants have no rational basis for the disparate treatment. Stated another way, prison officials need show only a rational basis for dissimilar treatment in order to defeat the merits of Plaintiff's claim. *Id*.

Even where similarly-situated persons are treated differently by the state, "state

action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id.* at 277; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

      v.      <u>Malicious Prosecution</u>

To state a colorable claim for malicious prosecution under § 1983, a plaintiff must plausibly allege "that the defendants prosecuted [the plaintiff] with malice and without probable cause, and that they did so for the purpose of denying [the plaintiff] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Prosecution based on negligence or mistake does not amount to a § 1983 violation.

**5.    Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880

F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of an Eighth Amendment or due process claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether

filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Every intended defendant must be identified in the caption of the amended complaint. Including a defendant in the body of the pleading, but not in the caption, is not enough.

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "First Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant

knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.  Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. If Plaintiff does not amend within 28 days, this case may be dismissed without further notice.

2.  Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice. Plaintiff may renew the request for counsel in an amended complaint.

DATED: August 7, 2019

B. Lynn Winmill
U.S. District Court Judge